

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **KGS STEEL, INC.,** | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO.: _____ |
| **HOUSTON MCCANDLESS;** | ) |
| **RANDALL A. DUKE;** | ) |
| **BENTLEY STEEL, INC,** | ) |
| Defendant(s). | ) |

## COMPLAINT

### I.  PARTIES

1. Plaintiff **KGS Steel, Inc.** is a corporation organized and existing pursuant to the laws of the State of Alabama and the Plaintiff in this Action.

2. Defendant Houston McCandless is a resident citizen of the State of Tennessee.

3. Defendant Houston McCandless executed a written consent to the jurisdiction and venue of this Court.

4. Defendant Randall A. Duke is a resident citizen of the State of Tennessee.

5. Defendant Randall A. Duke executed a written consent to the jurisdiction and venue of this Court.

6. Defendant Bentley Steel, Inc. is a corporation organized and existing in the State of Tennessee and having its principal place of business in the State of Tennessee and, therefore, is a citizen of the State of Tennessee.

7. Regions Financial Corporation is a corporation organized and existing pursuant to the laws of the State of Delaware. Regions Bank is a corporation organized and existing pursuant to the laws of the State of Alabama. Regions Financial Corporation and Regions Bank are not

parties to this Action. However, the activities of these two entities in concert with, furtherance of and acquiescence to the Defendants in this Action made possible the wrong acts of the Defendants made the subject matter of this Complaint. Consequently, the participation of Regions Bank and Regions Financial Corporation are detailed herein and all future references to those two entities shall be to the "Bank."

## II. JURISDICTION

Jurisdiction is proper under 28 U.S.C. §1332 as the parties are diverse and the amount in controversy exceeds $75,000.

## III. FACTS

### A. General Background.

8. KGS Steel, Inc. is a unique and distinct corporate entity (hereinafter "KGS").

9. KGS has a long and special relationship with the Bank of approximately 20 years.

10. On June 24, 1996, KGS hired Houston McCandless to be the Manager of its Nashville, Tennessee operation (hereinafter "McCandless").

### B. Secret Account.

11. On July 28, 2004, the Bank allowed McCandless to open a Regions Bank account in the name of KGS Steel, Inc., this account will herein be referred to as the "Secret Account."

12. KGS did not authorize McCandless to open the Secret Account.

13. KGS did not authorize the Bank to open the Secret Account.

14. The Bank opened the Secret Account without any confirmation from the senior management of KGS, all of which were and are located in Alabama.

15. The Bank opened the Secret Account without any confirmation from the ownership of KGS, all of which were and are located in Alabama.

16. McCandless did not disclose the existence of the Secret Account to the senior management of KGS, all of which were and are located in Alabama.

17. McCandless did not disclose the existence of the Secret Account to the ownership of KGS, all of which were and are located in Alabama.

18. The Bank did not disclose the existence of the Secret Account to the senior management of KGS, all of which were and are located in Alabama.

19. The Bank did not disclose the existence of the Secret Account to the ownership of KGS, all of which were and are located in Alabama.

**C.    Scrap Steel.**

20. In the Steel Industry, companies such as KGS purchase steel products for resale.

21. KGS sells these products to (a) end-users and (b) wholesalers further down the supply chain.

22. When KGS sells steel, it is not uncommon for the steel to be "cut" or fabricated to a custom size or purpose. The "leftover" steel is referred to as "scrap." Some of the scrap is so small that there is little chance of scrap being sold to a subsequent customer. These scraps are placed into a "scrap tray." Other scraps are large enough to be placed into inventory in hopes that they can be sold to a subsequent customer either "as is" or after additional cutting, preparation or fabrication. In either case, all of the leftover steel pieces eventually find their way to the "scrap tray."

23. In the Steel Industry, there are companies that specialize in purchasing the scrap. Once the scrap in the scrap tray is purchased, the scrap works its way through the scrap supply chain back to a producer (i.e. a steel mill) where the scrap is melted to make "new steel."

24. This Scrap Steel has value. The scrap dealers pay for the scrap in the scrap tray.

### D. The Embezzlement.

25. McCandless "sold" KGS' scrap steel from the scrap trays at the KGS Tennessee location to scrap dealers and received funds for the scrap steel.

26. When McCandless sold scrap steel to scrap dealers, the funds he received were sometimes in cash and sometimes in checks made payable to KGS Steel, Inc.

27. McCandless was required to forward these checks and cash to KGS's headquarters located in Alabama.

28. McCandless sent some of the scrap funds to KGS's headquarters in Alabama.

29. However, McCandless retained the majority of the scrap funds in Tennessee without the knowledge or consent of KGS.

30. As part of a plan and scheme of embezzlement, McCandless placed an unauthorized/fraudulent/forged endorsement on the checks that he had improperly hidden and retained.

31. McCandless deposited those checks with an unauthorized/fraudulent/forged endorsement into the Secret Account at the Bank.

32. Simultaneous with the deposits into the Secret Account, McCandless withdrew cash from the Secret Account.

33. All of the foregoing also supported the wrongful acts of Bentley Steel and Randall A. Duke, of Duke Steel, described below.

### E. Bentley Steel.

34. McCandless engaged in or agreed to participate in some arrangement, plan or scheme with Bentley Steel to "launder" or conceal the source of the money and avoid paying taxes on the same and otherwise deprive KGS of these funds which were rightfully the property of KGS.

35. On information and belief, McCandless agreed with Bentley Steel to "write off" invoices from KGS to Bentley Steel for amounts that were otherwise collectible in exchange for payments or benefits flowing from Bentley Steel to McCandless or his family or associates.

36. Bentley Steel benefitted from this arrangement because the value it diverted to McCandless or his family or associates was less than what Bentley Steel owed KGS.

37. McCandless benefitted from this arrangement because he or his family or associates received value from Bentley Steel to which he was not (and they were not) entitled to receive.

38. As an additional scheme, McCandless utilized some of the cash from the Secret Account to pay the invoices from KGS to Bentley Steel.

39. The total amount of cash stolen from KGS from the Secret Account with the participation or acquiescence of the Bank and its representatives and concealed or laundered through Bentley Steel exceeded $200,000. On information and belief, this amount is a small portion of the total amount embezzled by McCandless.

40. On information and belief, there was no reason for McCandless to redirect the resources he had stolen from KGS to the benefit of Bentley Steel unless he or his family or associates were to receive a benefit from Bentley Steel.

41. On information and belief, Bentley Steel did provide a benefit to McCandless or his family or associates in exchange for the payment by McCandless of the funds he stole from KGS and then used to benefit Bentley Steel by satisfying the invoices of KGS and otherwise due to be paid from Bentley Steel. Bentley Steel still owes KGS for the invoices paid with money stolen from KGS.

### F. Duke Steel.

42. On information and belief, Randall A. Duke and McCandless entered into a separate agreement whereby Duke would "sell" steel owned by KGS to customers of KGS and other third parties in the name of Duke Steel and "receive" payment for that steel. Restated, McCandless and Duke would sell KGS's steel, but then receive the money into the account of Duke Steel to the detriment of KGS and the benefit of Duke Steel.

43. On February 6, 2014, Duke began operating a company known as "Duke Steel" which included storing equipment and installing an electrical panel and equipment at KGS's Nashville location. This was all done with the knowledge and consent of McCandless without approval of KGS. Duke was competing with KGS by selling steel to accounts which would have otherwise done business directly with KGS. Furthermore, it is currently unknown how much steel Duke used and what amount of steel he actually paid for and at what rates. Furthermore, customers of KGS are engaged in the same fabricating activities. Consequently, with each transaction, Duke was either competing with KGS's customers or competing with KGS.

### IV. CLAIMS

**COUNT I – Conspiracy to commit fraud, breach of contract, unjust enrichment against Defendants Duke, McCandless and Bentley Steel.**

44. The Defendants Duke, McCandless and Bentley Steel conspired together to sell Plaintiff's KGS scrap metal without KGS's knowledge and to steal the proceeds from the same.

45. As stated above, Defendant McCandless would sell KGS's scrap metal and deposit the money in the Secret Account, then take cash withdrawals which he then used to enrich himself and Defendant Duke. In addition, Defendant McCandless would use the stolen funds to pay Plaintiff KGS for bills owed by Bentley to KGS. Bentley, upon information and

6

belief was aware of this and participated in the same. These actions by Defendants Duke, McCandless and Bentley constitute a conspiracy to commit the claims outlined below.

### COUNT II – Unjust enrichment against all Defendants

46. The Defendants used the scrap metal money stolen by McCandless to enrich themselves. Specifically, McCandless and Duke received monies from the sale of scrap for their personal use. In addition, some of the stolen money was used to pay KGS for a reduction in monies owed by Bentley to KGS.

47. In addition, Defendants Duke and McCandless stored equipment, stole scrap metal, and competed against KGS while employed by KGS using "Duke Steel".

48. These Defendants have been unjustly enriched from the money received from the scrap metal stolen from KGS. In addition, Duke and McCandless have been enriched by giving jobs to "Duke Steel" that would have gone to KGS.

49. As a proximate result of the Defendants' unjust enrichment, KGS has been injured as its scrap metal was stolen, sold and the money used for their own personal benefit and to benefit Bentley by using some of the stolen funds to pay bills owed by Bentley to KGS at a lowered rate.

### COUNT III – Breach of Contract Against Bentley

50. Defendant Bentley entered into numerous agreements wherein Bentley agreed to pay Plaintiff KGS for services rendered.

51. As stated above, the money received by the Defendants from the stolen scrap was used in part to pay bills for services rendered by KGS for Bentley, at which time the bills were reduced and KGS was paid with its own money to satisfy bills actually owed by Bentley.

7

52. As KGS did not receive the monies owed to it by Bentley, Bentley has breached the contracts entered into between KGS and Defendant Bentley.

53. As a proximate result of this breach of contract, the Plaintiff KGS has been injured as it has not been paid by Bentley for the contracted services.

### COUNT IV – Fraud against McCandless and Duke

54. The Defendants McCandless and Duke negligently, willfully and wantonly misrepresented and/or failed to disclose that they were stealing scrap metal and inventory for their own benefit and for the benefit of Bentley. Defendant McCandless and Duke further failed to disclose the existence of "Duke Steel" and the fact that they were competing directly with KGS while employed by the same.

55. Duke and McCandless misrepresented that they were selling all KGS scrap metal and inventory for the benefit of KGS. In addition, because of their relationship with KGS, they had an obligation to disclose that they were selling KGS's scrap metal and inventory for their own benefit and for the benefit of Bentley but failed to do so. McCandless and Duke further failed to disclose the existence of Duke Steel, a disclosure they were obligated to inform KGS of.

56. As a proximate result of Defendants McCandless and Duke's fraud, the Plaintiff has been injured.

### COUNT V – Conversion, All Defendants

57. Defendants McCandless, Duke and Bentley converted the scrap metal and inventory owned by KGS to enrich themselves and Bentley.

58. As a proximate result of their conversion, the Plaintiff has been damaged.

## VI. PRAYER FOR RELIEF

WHEREFORE, ALL PREMISES CONSIDERED, the Plaintiff respectfully requests all compensatory damages from all Defendants and punitive damages allowed by law and to be determined by a jury.

## **JURY DEMAND**

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

*/s/Craig L. Lowell*
Craig L. Lowell (ASB-4232-W86C)
Counsel for Plaintiff KGS Steel, Inc.

OF COUNSEL:
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB, LLC
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203
Telephone:     (205) 314-0500
Facsimile:     (205) 254-1500
clowell@wigginschilds.com

*/s/ David C. Skinner*
David C. Skinner (ASB-8271R81D)
Counsel for Plaintiff KGS Steel, Inc.

OF COUNSEL:
David C. Skinner, LLC
Magnolia Financial Center, Suite 103
1025 23rd Street South
Birmingham, AL 35205
Telephone:     (205) 871-9566
Facsimile:     (205) 871-9562
david@skinnerlegal.com